Good morning. Please the Court, I'm Douglas DeVries, representing Dr. Buchanan, the appellant. Kagan, why don't we just remand this case under Abate? Is there any reason that took on with the argument? Well, that is, of course, our primary position in the courts, that this should be remanded under Abate. However, there are two questions of law that the trial court ruled on that if it goes back under Abate without the two questions of law being addressed and resolved, then we're right back where we started with, and we feel that we would be wasting the trial court's time and the appellate court's time because we'd be right back up on legal issues that should be resolved in this appeal. The first of those is — Were they resolved by the district court earlier? They were resolved by the district court adverse to Dr. Buchanan as two central elements of the review that he conducted under Atwood, which is now abandoned. And — What are those issues? Yeah. And it is an issue. I believe it's a joint issue. And if I may jump ahead on that, under Abate actually not only changes and recognizes the way insured plans are reviewed under abuse of discretion standard, but it lays out a number of very detailed considerations that were not addressed by the court in its initial review. In addition to that, it was not an issue in Abate, but as we cited in our brief under BERGT, it's B-E-R-G-T, versus Retirement Plan for Pilots of Marker, which is a Ninth Circuit opinion, if there is a failure to acknowledge and apply law in the review, that would also constitute an abuse of discretion. And it's in that context that what the trial court did was two things with respect to law, legal decisions. First, the trial court failed to consider any State law that might have been saved from preemption and therefore applied in the case. The court swept away all State law under a general observation in the ruling that all the court was doing was interpreting the terms of an insurance policy. And that's not the case. Under the U.S. Supreme Court precedent, starting with Massachusetts v. MetLife through FMC v. Holiday on up through Kentucky Health Plan v. Miller, there are four ways that State law, which under ERISA is defined as not just statutes but also regulations and common law, can affect an ERISA review. First, you could have a mandated benefit, which we believe is an issue with respect to the Nevada statutes that control the content of the policies. There are two in particular in this case. One is the time of payment provision. The second is the matter of an independent medical examination, both of which are provided under Nevada 689-080. I don't remember this issue in your brief. I don't remember this. I remember you discussing a lot of State law in your brief, but I don't remember these particular issues being raised in your brief. Yes, they're both in the brief. They are? The way we raise the time of payment issue, the duty, what the policy says in this case is that upon submission of proof of loss satisfactory to the company, they have 60 days within which to decide whether to pay a claim. Under the statute, it says it shall be paid immediately upon receipt of proof of loss. There's a whole subsidiary issue about what is proof of loss and what does that really mean in the context of a disability insurance policy. And we've talked about that. The second issue is, and again, the Court talked about the independent medical examination as if the issue only arose in 2003 after the denial of the claim and while the appeal was pending. In fact, Dr. Buchanan had written to the company prior to the initial claim denial in 2001 and questioned why. You're saying the records are inconsistent. Why isn't somebody talking to me? Why isn't somebody examining me? And we believe that the duty of an independent medical evaluation that is provided as a right to the insurer and the insurer. Where is that, Nevada law? That is Nevada Revised Statutes 689B.080.6, subparagraph 6. I have a copy with me, actually. This disability insurance has developed through model acts and whatnot since between, primarily between 1950 and 1972. It is admittedly archaic. And there are all kinds of subrules. One of the rules is that under Nevada statutes is if there's a provision in the statute that it's meant to protect an insured, the insurance policy may not be written or applied in a way that's less favorable than that which is in the statute. And so this is the analysis. Could you tell me where in your briefs you raised either of these statutes? I'm sorry? Could you show me where in your briefs you raised either of these statutes? Yes. You talk about this process-of-nature rule, and you talk about total disability definition. Oops. I hope that's the brief below. All right. Well, why don't you show it to me at rebuttal. The easy answer is the statute is in the table of authorities, and that directs you to the page where it's discussed. And so but moving on. In addition, so that's the first way.  The second way is that the State law can provide the rules of decision in the ERISA claim processing. The third way is that it can supplant, State law can supplant contract terms. This is the ERICA-Moore definition of total disability, and that's a brief by both parties. And then lastly, it can involve claims processing standards under the local regulations. And so this notion that the Court simply swept away all State law preempted from, exempted from ERISA preemption, we believe was error and can greatly influence the review. Third, which is a subcategory in a sense, is the Court did fail to consider and apply the process of nature rule, and this was in on two particulars which are raised in the briefs as well. First, the Court said the process of nature rule didn't apply based on a California case, Ostero, which, as we point out, was not a process of nature rule case anyway. It involved presenile dementia, and there was a footnote that was later rejected by Moore v. United American, which is a key case. So the Court did not recognize the cases, instead used a non-process-of-nature rule case involving illness, not accident, which is what treats process of nature. Kagan. Can you explain to us what the process of nature rule has to do with any of this? I'm sorry? Can you explain to us what the process of nature rule is and how it applies here? Yes. The process of nature rule. Assuming it survives preemption. That's it. The process of nature rule is a rule that a common law rule that was developed that states if a disability arises from accident or injury, the benefits vest at that time, and the disability under the disability coverage will be covered even though the disability takes longer to actually occur as a result of the process of nature. The classic case would be, which I've actually had, is a diabetic who steps on a rusty nail, who develops an infection, who nine months later has a leg amputated and becomes disabled. The rights of the disability benefit vested at the date of the injury, so long as the disability that occurred later was the result of the process of nature and the time consumed. Well, what are the facts in this case that make that rule applicable here? Okay. This actually focuses in on the other reasoning of the trial court that we believe was in error. What the trial court said was, even if that's the rule, I don't think it applies because of austere, which was clearly wrong. But secondly, he said, the process of nature rule doesn't apply after coverage has lapsed. And on the facts of this case, Dr. Buchanan suffered a spinal infarction in a surgery, and then he was either continuously disabled from that point forward because he was never able to resume his occupation in the usual and customary way and with reasonable continuity. If that isn't the case, then when he finally gave up the dose and couldn't practice anymore, and the hospital said he couldn't practice and he knew he couldn't practice, that related back to the injury he suffered during the surgery, a spinal cord injury. And every process of nature rule case, all the ones cited in the brief and by the court, Wilden, Frenzer, Shilk, and the Eastern District case, Anderson. And why do you think this survives ERISA preemption? I'm sorry? Why does this rule survive ERISA preemption? I mean, if this survives ERISA preemption, then every State common law rule about interpreting insurance contracts survives ERISA preemption. Is that correct? That's not the case. I disagree. As the Court held in Anderson v. Continental Casualty, the reason the process of nature rule, as opposed to a more general rule dealing with contract interpretation is, under Kentucky Health Plan v. Miller, the two prongs that must be satisfied are, one, the rule or the common law rule or statutory rule or regulation has to be directed primarily and solely at insurance. And under Unum v. Ward, what the Supreme Court said is that actually is not just temporal to the claim, but actually in its origin. So that's one. It has to be directed to insurance. Secondly, it has to affect the risk that is between the insurer and the insured. The notice prejudice rule, which is Unum v. Ward, shares all the identical characteristics with the process of nature rule. The process of nature rule applies only to accident, accident dismemberment and disability coverage or disability or, as Nevada calls it, health coverage. It has never been applied outside the field of insurance to ñ because it only applies to an insurance benefit that results from injury. And it clearly affects the risk between the parties because, as has occurred in every case, by the terms of the policy, or in this case an ERISA policy, the So contrary to what the trial court held, every ñ that's the very purpose of the process of nature rule. It's to recognize that disability is a ñ Well, that's not my understanding, actually, by your time. My understanding is that it applies in a situation in which the person is still covered by the insurance policy, but by the terms of the insurance policy, you can only be covered for disabilities that arise within a certain period of time. But the person is not outside the system. Well, it's not ñ The problem with this rule is that it would mean that employers who provide disability insurance could be responsible for many, many years for people who, while they were working at the place, were not disabled. And the understanding of what disability insurance is about, it's about people who, while they're working someplace, can't work anymore. Yeah. I'm sorry. I think the best conceptual analysis for lawyers, perhaps, is the difference between an occurrence policy and a claims-made policy, or between, for instance, environmental coverages with multiple triggers. In fact, that's what insurance is. You ensure the events that occur during a coverage period. And what the process of nature rule says, specific to the area of disability, just Thank you. Your time is up. I'm sorry. Can I ask one question? Yes, Your Honor. Do you have a case which tells us what areas are preempted and what areas are not preempted by ERISA? I do. And is the process of nature rule preempted or not preempted by ERISA? And if so, please tell me what case to look at. The process of nature rule is not preempted by ERISA. The only case in the Ninth Circuit to have addressed it and been published is Anderson v. Continental Casualty, which we have cited, Third District, the Eastern District of California. It has ‑‑ I know it's been briefed in the Ninth Circuit, but I don't think it has ever reached a decision. And Anderson is a district court case. Is that what it is? District court case, Sacramento Eastern District. Why did it decide? I'm sorry? Why did it hold? Why was the hold in? I'm sorry. I have a hearing. What was the holding in Anderson? The holding in Anderson was that the process of nature rule is not preempted by ERISA, and that on the facts of that case, it involved a group insurance policy with a 365-day termination of coverage. The person worked for an additional year after that, then stopped, and then filed  the case. If I can interrupt for a minute, because you're all very out of time. The Supreme Court case that is most relevant, although it's not about the process of nature rule, is Ward. Is that not right? Is the ‑‑ Ward. Because that is the one case that is about ‑‑ It's actually ‑‑ Just a minute. Let me talk. Because that is the one case that is about the application of common law rules of nature to insurance contracts that holds that they are statutes concerning insurance. Is that right? That is directly on point. Okay.  Thank you, counsel. Thank you, Your Honor. May it please the Court, Dan Lindahl appearing on behalf of the Appellee Standard Insurance Company. To address the Court's opening question concerning a body, it is certainly my understanding that it has been this Court's practice in other similar cases to remand. And, in fact, I was a little surprised this case went to argument. I've had others that were simply ‑‑ Did you ask us to remand? I did not. No. Because ‑‑ Did you cite a body to us? Did I cite a body to you? No. I did not. No, you didn't. So what were you surprised about? If you thought we should have remanded because of a body, why did you ask us to remand because of a body? Well, because we don't want to remand, Your Honor. Well, that doesn't ‑‑ well, but it was the appropriate thing to do. You just said so. Well, what I said, Your Honor, was that this Court has remanded other cases like this one. And you don't think you had a responsibility as an officer of the Court to tell us that the underlying statute standards passed has changed, that what the district court decided is no longer valid, and that we should remand for a new decision? Well, no, Your Honor, because my argument is that we'd like the Court to reach the merits of this case. This is a case where the appellant, the plaintiff, has presented no evidence whatsoever that a conflict of interest affected standards decision. And so if there is a case that after a body can go ahead and be decided on the merits and affirmed, this would be such a case. And that's what we would ask this Court to do. And apparently, the plaintiff also wanted the Court to reach the merits because they declined to move for a remand. Well, they did ask ‑‑ they did finally at least cite a body and suggest a remand, and you never did it at all. I don't recall they ever suggesting a remand, Your Honor, until this ‑‑ Well, until I read their 28-J letter. They cited a body, but they never asked for a remand until this morning. Now, with respect to ‑‑ I don't know whether the appellant is still arguing about whether the plan here confers discretion. They didn't raise that in their argument this morning. They argued it in their brief. But a body addressed what type of plan confers discretion and what type does not. And in a body, the Court held that where the plan says that the administrator has the power or authority to make final benefits determinations, that clearly confers discretion. Here, the plan does quite a bit more than that, granting full and exclusive authority. One thing that the plaintiffs mention, which I'd never thought about before and which I do find disturbing, is where does the authority to interpret the plan appear? It appears in the insurance policy, right? Yes, it does. Does it appear in anything that the plan has put out as opposed to what they bought, which is an insurance policy? Did the plan ever give the authority to the insurance administrators to do this? The plan ‑‑ The insurance administrators gave it to themselves, as far as I can tell. Well, it says, except for those functions which the group policy reserves to the policy owner, then the company, the administrator, has the discretion. But who says this? It's the administrator that says it, not the plan fiduciaries. It's a contract between the policy owner and the administrator. I understand that. And apparently they agreed that that was going to be the allocation of authority. But the fiduciaries never in any official plan document did this. The plan document is not in the record. So I can't say what the plan document says. It seems a little odd to me. Although I think we've proceeded on that basis in other cases. But it doesn't strike me that really if we're going to ‑‑ that we can't have a situation where the administrators are conferring authority on themselves. If the policy owner agrees that the administrator has ‑‑ Well, I don't know that agreement is good enough. The fiduciaries need to do it. They don't need to just agree to have somebody else do it. But in any event, if it's not in the record, I don't know how we're going to decide anything about this. So go ahead. It's not in the record. Now, with respect to the process of nature rule, which was discussed at some length, let's begin with the proposition that Nevada has never adopted the process of nature rule. All right. Let's put that aside. What about these statutes? I did find them mentioned in his brief, although in a different section. If there are statutes in Nevada that apply to insurance policies in general, and that say ‑‑ which apparently there are, and that he's maintaining, say something about the timeliness of deciding on claims and about need for an independent medical examiner, would those be preempted? Well, of course, the ERISA statute and the ERISA regulations govern things such as the time limits for deciding claims, the manner in which the company must resolve a claim, the specificity with which it must resolve it. But what about the part of the statute that says that ERISA does not apply to state law governing the business of insurance? Well, another problem with the plaintiff's argument is the misunderstanding of what some of these statutes say. I know, but I'm asking just a preemption question right now, because I never really thought about that before. Well, all I can say is that this Court has said the administration of ERISA claims is governed by the ERISA statute. Right, absent something else. But here we have something else. We have assertedly state laws which are actual statutes and which seem plainly to be governing the business of insurance. What else are they doing? Why aren't ‑‑ why don't they prevail? Your Honor, I ‑‑ I mean, if these are statutes that regulate the business of insurance, then they would not be plain. Well, are they? I mean, you said there was a debate about what they mean, but putting that aside, aren't they statutes governing the business of insurance? You know, these statutes that they have alluded to are ‑‑ I can't say whether they do or don't regulate insurance. You know, the plaintiff hasn't developed or advanced these arguments, has made no preemption argument. Well, it is in the brief. I mean, I did find it's not terribly prominent in the brief, but it's in the brief. Yeah. And in the district court, the district court said, you know, Federal law governs this ERISA claim, and that was, you know, as far as it went in the district court. Was this argument made in the district court? The process of nature rule argument was made. What about these statutes? Was that raised in the district court? They made arguments about the application. So it was raised. All right. Yes. I'd like to go back to your opening point, which was that you don't want to remand. You want this court to find. I take it that the district court was correct, because even under the Abadie case, there was no evidence whatsoever that would allow the structural conflict of interest to be determined to have affected the coverage decision. Is that your point? My point is there, other than the structural conflict identified in Abadie, which the court there said needs to be taken into account. But the court also said where there's no other evidence of conflict, you know, the skepticism that the court brings to the review should be low. And here, given that there is nothing other than the structural conflict. Let me suggest to you some items which you can tell me why they should or should not be considered. Yes, Your Honor. First, the Abadie court talked about the failure to credit a claimant's reliable evidence. Here, as I read the record, Standard gave little or no weight to the July 19, 2001, letter from Dr. Herlinski, stating that Buchanan had been disabled from July 1999 to the present. And Herlinski was his boss. He knew what he could do and what he couldn't do. May I respond to that? Yes. There's two things about Dr. Herlinski's letter. First of all, it directly contradicted Dr. Herlinski's earlier letter. So that undermined Dr. Herlinski's July 19 letter by itself. Second, Dr. Herlinski's July 19 letter didn't say he was disabled. It said that Dr. Buchanan was unable to perform the job in the manner in which this hospital would like him to perform it. He's unable to work as the admitting physician on nights or weekends in our practice. That doesn't render one disabled from performing as a neonatologist. It means that he can't perform that particular job function, that particular shift. But isn't that a particularly sensitive and unique area that a neonatologist performs, the first look at the emergency room of the hospital? Yes, Your Honor. I mean, isn't that where everything, the hens are coming home to roost at that point? That may be a particularly sensitive part of the job, but it's not the only part of the job by any means. But isn't the problem here not what might have been made of Dr. Kolinsky's letter, but that nothing was made of it? I don't agree that nothing was made of it, Your Honor. I mean, it wasn't mentioned. It wasn't discussed. It wasn't referred to. No? I'm not sure. It was considered. It was among all the records that the company considered. But is there anything in any reasoning of the insurance company that takes account of it? I don't recall whether it's specifically mentioned. As the company did mention, the treating doctors repeated assertions that Dr. Buchanan was never disabled before his insurance lapsed. Now, another item mentioned in the validity that the Court can look at is the colorfully described parsimonious claim granting history. Now, in Buchanan's first claim for disability benefits, a standard insurance physician consultant concluded benefits could be paid for up to three months after surgery without additional documentation. But they only paid him for two months. You want to know why? Isn't that parsimonious? It's not. There's a 30-day waiting period, and then he gets two months' benefits. But why not pay him the third month if they found that he was disabled? You get he was disabled for three months, and there's a 30-day elimination period, and then the benefits become payable. And didn't Dr. Buchanan ask for an independent medical examination that was given him? He asked for that years after the date, the relevant date on which he would have had to prove disability. And, of course, he was examined by his own doctor once, and that examination did not establish grounds of disability. Well, that's Dr. Kerr. Yes. Dr. Kerr changed his opinion later on. He certainly did. He flipped after several years. Okay. Thank you. Thank you, counsel. I'm out of time. Thank you very much. The case of Buchanan v. Standard Insurance Company is submitted. We will go on to Vizcarra, Ayala v. Gonzalez.
judges: Berzon, Bea, Gibson